Case 3:25-mj-00563-MEG   Document 1-1   Filed 06/11/25   Page 1 of 12

United States District Court
District of Connecticut
FILED AT NEW HAVEN
6/11 ,20 25
By N. Langello
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

IN THE MATTER OF THE SEARCH OF            :
ONE SILVER SEAGATE EXTERNAL HARD DRIVE,   :   No. 3:25-mj-00563 (MEG)
SERIAL NUMBER 5NF2L830                    :

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Leonardo J. Soto, being duly sworn, depose and state as follows:

### INTRODUCTION

1. I am a Detective with the New Haven Police Department and have been so employed since May 20, 2008. Since December 18, 2015, I have been assigned as a Task Force Officer of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"). I am currently assigned to the HSI New Haven Resident Office in New Haven, Connecticut. While assigned to HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography. I have gained experience through training at the New Haven Police Academy, educational seminars, and everyday work relating to conducting these types of investigations. I have received training in the area of child pornography and child exploitation and have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media. I have participated in numerous criminal investigations involving human trafficking, child pornography, and child exploitation. I have also gained experience in the common practices of child pornographers and human traffickers through participating in dozens of investigations. During my assignment with HSI, I attended and graduated from the Under Cover Operatives School conducted at the HSI Cyber Crimes Center in Fairfax, Virginia.

2. I am a federal law enforcement officer authorized to investigate violations of United States

1

laws and to execute warrants issued under the authority of the United States.

3. As discussed more fully herein, I am currently investigating Jason Gibson ("GIBSON"), an adult male born in 1980, for receiving and possessing child pornography in violation of 18 U.S.C. §§ 2252A(a)(2) and 2252A(a)(5)(b) (together, the "TARGET OFFENSES").

4. I submit this affidavit in support of an application and search warrant authorizing the examination of a silver Seagate external hard drive, serial number 5NF2L830 (the "TARGET DRIVE"), as further described in Attachment A, for evidence, contraband, and instrumentalities of criminal activity that may be found therein, as more specifically described in Attachment B. The TARGET DRIVE is presently in the custody of HSI in New Haven, Connecticut.

5. The statements contained in this affidavit are based on my investigation and personal knowledge, information provided to me by members of the State of Connecticut Probation Services and other law enforcement officials, and information from records checks conducted by law enforcement officials. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are sufficient to establish probable cause to believe that evidence, contraband, and instrumentalities of the TARGET OFFENSES are located within the TARGET DRIVE.

## RELEVANT STATUTES

6. 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography, as defined in 18 U.S.C. § 2256(8), or any material containing child pornography, using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means,

including by computer.

7. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce, or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## FACTS SUPPORTING PROBABLE CAUSE

8. In 2018, the Glastonbury and University of Connecticut ("UConn") Police Departments conducted a joint investigation after receiving an online tip that GIBSON—an assistant research professor at the UConn campus in Storrs, Connecticut—was involved in a chat room where members traded child pornography. The investigation revealed that GIBSON was in possession of over 20,000 images and 100 videos of child pornography, which he stored on his cellular phone.

9. On February 28, 2020, GIBSON was convicted of possession of child pornography in the second degree in violation of Connecticut General Statutes § 53a-196e and sentenced to a ten-year term of imprisonment, suspended after 30 months, to be followed by a ten-year term of probation. On January 4, 2021, GIBSON was released from the custody of the Connecticut Department of Correction and began serving his ten-year period of probation.

10. On April 12, 2023, GIBSON's probation was revoked for violating his conditions of release and he was resentenced to a 90-month term of imprisonment, suspended after six months, to be followed by a 94-month term of probation. On August 8, 2023, GIBSON was released from the custody of the Connecticut Department of Correction and began his 94-month term of

probation. The terms of GIBSON's probation include, among other things, a condition allowing a probation officer to search his person, possessions, or residence; conditions requiring GIBSON to only use computers[1] as authorized by his probation officer, sign a "Computer Access Agreement" prior to using any computer, and provide a written explanation for the purpose of his owning any computer; a condition prohibiting GIBSON from possessing any sexually explicit material in any manner on any disk, computer, or other electronic storage medium; conditions authorizing probation to search any computer "or other similar equipment" in his possession at any time, announced or unannounced, to verify that it is not being utilized in violation of his conditions of probation; and a condition authorizing probation to confiscate any computer if an examination of the computer revealed that GIBSON used the computer in any manner constituting a violation of the conditions of his probation.

11. On or about March 6, 2024, probation officers met with GIBSON at his residence in Gales Ferry, Connecticut, for a routine home visit. During the visit, they located an unapproved electronic device—a black, LG X-Charge cellular phone (the "Phone")—in GIBSON's bedroom. The probation officers opened the Phone using a passcode provided by GIBSON and located an application described as a "Tor Browser" on the device.[2] In addition, the probation officers located within the notes section of the device several "pins" or "keys" to access links with titles including "Myteens," "TORLINKS, TORCH SEARCH," "CP LINKS, "NKIDS," AND "PEDUPLOAD." The probation officers seized the Phone and subsequently transferred it to the Groton Town Police Department ("Groton PD") to undergo a digital examination.

12. On March 13, 2024, GIBSON met with a probation officer and admitted that the

---

[1] GIBSON's conditions of probation define "computer" to include "all smartphones, tablets, flip phones, ipads, etc."

[2] Based on my training and experience, I know that TOR browsers are commonly used to access the dark web and view illegal material such as child pornography.

4

Phone contained child pornography. On March 20, 2024, GIBSON told another probation officer that he had accessed his old email account and "went through different emails which contained links" to view child pornography.

13. On April 2, 2024, Groton PD notified probation that it had completed the examination of the Phone that probation had requested and placed the results of that examination on a USB thumb drive (the "Thumb Drive"). Groton PD further informed probation that the Phone contained a "large quantity" of child pornography. That same day, probation picked up the Phone and the Thumb Drive from Groton PD.

14. On January 31, 2025, and February 25, 2025, the Hon. Robert M. Spector and the Hon. Maria E. Garcia, United States Magistrate Judges, District of Connecticut, issued warrants authorizing HSI to search the Thumb Drive and the Phone. A forensic analysis of the devices revealed that the Phone contained approximately 268 images and seven videos depicting child pornography, including images and videos depicting infants, toddlers, and other prepubescent females performing oral sex on adult males and being vaginally and anally penetrated by adult male penises and other objects.

15. The Phone also contained dozens of text messages received by GIBSON with links to access child pornography material from the dark web.[3] For example, on April 23, 2021, GIBSON received a text message with a link ending in "tumtukmid.onion." On or about May 7, 2025, a special agent with HSI clicked on the link and was directed to a website titled "Pedo Play" which advertises "430 Gbytes of Underage Video and nothing else" and contains thousands of "thumbnail" images depicting child pornography.

---

[3] Gibson also received text messages that appeared to memorialize purchases of child pornography using Bitcoin. For example, on April 10, 2021, GIBSON received a text message stating "send 0.00029 BITCOIN to: 1Q6xs5gRxaQS1iJtTqJZBERBuxexYhQ3r4 Username: Goodman Password: Lolitasex."

16. On or about April 2, 2025, probation officers met with GIBSON at his residence for another routine home visit. During this visit, they located two additional unapproved electronic devices in a closet in GIBSON's bedroom—a black Seagate external hard drive ("Hard Drive 1") which was hidden beneath some folded shirts and the TARGET DRIVE which was found in a shoe box. The probation officers asked GIBSON about the contents of Hard Drive 1, and he responded that it contained his collection of child pornography that he had amassed over the years. The probation officers then seized Hard Drove 1, the TARGET DRIVE, and GIBSON's approved laptop and USB drive and transported them to the State of Connecticut Probation Services New London Office, where they conducted a preliminary review of the devices. The probation officers identified thousands of images and videos of suspected child pornography on Hard Drive 1 but did not find any suspected child pornography on the other seized devices.

17. Later that afternoon, the probation officers once again met with GIBSON who again acknowledged that Hard Drive 1 contained child pornography but stated that the other seized devices did not contain child pornography. The next day, I met with GIBSON's probation officers and took custody of Hard Drive 1.

18. On April 10, 2025, the Hon. Maria E. Garcia, United States Magistrate Judge, District of Connecticut, issued a warrant authorizing HSI to search Hard Drive 1. An analysis of Hard Drive 1 revealed that it contained approximately 18,116 images and 1,420 videos depicting child pornography.

19. On April 11, 2025, GIBSON's probation officers transferred the TARGET DRIVE to the State of Connecticut Department of Emergency Services and Public Protection, Division of Scientific Services (the "State Lab"), for further examination. The State Lab conducted its review and located approximately 16,571 unique images and 236 unique videos of suspected

6

child sexual abuse material on the TARGET DRIVE. On June 2, 2025, I met with GIBSON's probation officer and took custody of the TARGET DRIVE.

## SEARCH OF ELECTRONIC DATA AND FORENSIC ANALYSIS

20. As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the TARGET DRIVE was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be located on the TARGET DRIVE because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online usernames, nicknames, and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times a computer or mobile phone was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

   b. Information stored within a computer, mobile phone, or other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer, mobile phone or electronic storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer, mobile phone, or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the device was remotely accessed, thus inculpating or exculpating the device owner. Further, computer, mobile phone, and storage media activity can indicate how and when the device was accessed or used. For example, storage media inside computers and mobile phones typically contain information that logs:

user session times and durations, activity associated with user accounts, other electronic storage media that connected with the device, and the IP addresses through which the device accessed networks and the Internet. Such information allows investigators to understand the chronological context of device access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer, mobile phone, or other electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a device may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the device user. Last, information stored within a device may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within the device may indicate the owner's motive and intent to commit a crime (*e.g.*, internet searches indicating criminal planning), or consciousness of guilt (*e.g.*, running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer or mobile phone works can, after examining this forensic evidence in its proper context, draw conclusions about how such devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other information stored on the device and the application of knowledge about how a computer or mobile phone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer or mobile phone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses a computer or mobile phone to commit a crime, the device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. From my training and

experience, I believe that a computer or mobile phone used to commit a crime of this type may contain: data that is evidence of how the device was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of discussions about the crime; and other records that indicate the nature of the offense.

## **CONCLUSION**

21. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe, and I do believe, that there is evidence, contraband, and instrumentalities of the TARGET OFFENSES located on the TARGET DRIVE. Accordingly, I respectfully request that this Court issue a search warrant for the TARGET DRIVE, as described in Attachment A, authorizing a search for the items identified in Attachment B.

22. Because the TARGET DRIVE is already in the possession of law enforcement, the execution of the requested warrant will not involve the physical intrusion onto private property. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

Respectfully submitted,

Leonardo J. Soto
*Digitally signed by Leonardo J. Soto*
*Date: 2025.06.11 10:30:53 -04'00'*

Leonardo J. Soto
Task Force Officer
Homeland Security Investigations

Sworn to me through the transmission of this Affidavit by reliable electronic means pursuant to Federal Rules of Criminal Procedure 41(d)(3) and 4.1, this 11th day of June, 2025.

Maria E. Garcia
*Digitally signed by Maria E. Garcia*
*Date: 2025.06.11 15:22:53 -04'00'*

HONORABLE MARIA E. GARCIA
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**Property to Be Searched**

The property to be searched is a silver Seagate external hard drive, serial number 5NF2L830, which is presently in the custody of the United States Department of Homeland Security, Homeland Security Investigations, at 150 Court Street, Suite 650, New Haven, Connecticut 06510.



## ATTACHMENT B

### Particular Things to be Seized

All records and information on the TARGET DRIVE, as described in Attachment A, that relate to violations of 18 U.S.C. §§ 2252A(a)(2) (receipt and/or distribution of child pornography) and 2252A(a)(5)(B) (possession of child pornography) (together, the "TARGET OFFENSES") occurring from January 4, 2021, to the date this warrant is executed, including, but not limited to, the following:

1. Any photographs, images, videos, and other items, in any format, depicting child pornography, as defined in 18 U.S.C. § 2256, including any associated metadata and/or EXIF information;

2. Records of internet activity, including logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses related to the TARGET OFFENSES;

3. All notes, documents, records, correspondence, and materials, in any format and media (including, but not limited to e-mail, text messages, and online messaging), pertaining to the TARGET OFFENSES;

4. Evidence of who used, accessed, owned, or controlled the TARGET DRIVE, such as, but not limited to, logs, registry entries, configuration files, saved usernames and passwords, browsing history, user profiles, email, email contacts, photographs, and correspondence;

5. Evidence indicating how and when the TARGET DRIVE was accessed or used, including the geographic location of the device when it was accessed or used;

6. Records of or information about internet protocol addresses used by the TARGET DRIVE;

7. Records and information concerning online storage or other remote computer storage, including, but not limited to, applications used to access such online storage or remote computer storage and user logs or archived data that show connection to such online storage or remote computer storage;

8. Evidence of the TARGET DRIVE's attachment to other storage devices;

9. Information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of TARGET DRIVE or that aid in the identification of persons involved in violations of the TARGET OFFENSES;

10. Evidence of software that would allow others to control the TARGET DRIVE,

such as malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software and evidence of the lack of such malicious software;

11. Evidence of counter-forensic programs;

12. Passwords, encryption keys, and other access information that may be necessary to access the TARGET DRIVE; and

13. Contextual information necessary to understand the evidence described in this attachment.